JUDGE ABRAMS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

            - v. -                    :

VICTOR LIPKIN,                        :
VADIM ZUBKOV,
     a/k/a "Dima,"                    :
EDUARD ZAVALUNOV,
     a/k/a "Edik,"                    :
NIKOLOZ CHOCHIEV,
ANATOLIY FATAKHOV,
MARIANA SWAFFAR,                      :
JACQUELINE PINEZ,
JONATHAN OLIVER,                      :
     a/k/a "Moe,"
JASON BRISSETT,                       :
     a/k/a "Jay," and
GILBERT TROTMAN,                      :
     a/k/a "G,"
                                      :
            Defendants.               :

- - - - - - - - - - - - - - - - - - X

**SEALED INDICTMENT**

14 Cr.

# 14 CRIM 773

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

## COUNT ONE
(Conspiracy to Commit Mail Fraud, Wire Fraud and Health Care Fraud)

        The Grand Jury charges:

### BACKGROUND ON MEDICARE AND MEDICAID

        1.   The Medicare program ("Medicare") is a federal health care program providing benefits to persons who are over the age of 65 or disabled.   Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS").

        2.   The New York State Medicaid program ("Medicaid") is a federal and state health care program providing benefits to the

individuals and families who meet specified financial and other eligibility requirements, and certain other individuals who lack adequate resources to pay for medical care.  CMS is responsible for overseeing the Medicaid program in participating states, including New York.  The New York State Department of Health (the "NY DOH") administers the Medicaid Program in New York State and, in part, contracts with approved private managed care companies, located in, among other places, New York, New York, that provide coverage directly to the Medicaid beneficiaries.  Thus, depending in part on when an individual initially applied for Medicaid, a beneficiary may be covered directly by Medicaid (referred to as "straight Medicaid") or through a third party managed care company.  HHS provides more than $1 billion annually to the NY DOH to fund and/or reimburse the costs of the Medicaid Program.

3.    Medicare is divided into multiple parts.  Medicare Part B covers the costs of physicians' services and outpatient care. Generally, Medicare Part B covers these costs only if, among other requirements, they are medically necessary and ordered by a physician.

4.    Medicaid also covers the costs of medical services and products.  Generally, Medicaid covers these costs only if, among other requirements, they are medically necessary and ordered by a physician.

2

5.     Both Medicare and Medicaid cover diagnostic tests such as stress tests, sleep tests, external counter pulsation (ECP) tests, and electrocardiogram (EKG) tests.

6.     Physicians seeking to participate in Medicare Part B and Medicaid are required to apply for and receive a provider identification number.   The identification number allows a physician or medical clinic to submit bills, known as claims, to Medicare and Medicaid to obtain reimbursement for the cost of treatment and related health care benefits, items and services that they had provided to beneficiaries.

7.     To receive reimbursement from Medicare or Medicaid for a covered service, a medical provider is required to submit a claim, either electronically or in writing.   The claim forms require certain important information, including (a) the beneficiary's name and identification number; (b) the identifying number of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item, or service; (e) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (f) whether or not the beneficiary was also a Medicaid or Medicare recipient.   By submitting the claim, the provider certifies, among other things,

3

that the services were rendered to the patient and were medically necessary.

8. For Medicaid in New York, health care providers submit claims to the private managed care companies that are directly administering the Medicaid program. Those managed care plans pay the health care providers directly, and are then reimbursed by the NY DOH.

9. Under Medicare and Medicaid, certain cardiology services – including stress tests – are only reimbursable if they are performed under the direct supervision of a licensed physician.

10. At all times relevant to this Indictment, pursuant to New York State Law, all medical clinics in New York State must have been incorporated, owned, operated, and controlled by a licensed medical practitioner.

<u>The Defendants and Relevant Entities</u>

11. At all times relevant to this Indictment, the "Avenue V Clinic" was a purported medical clinic located in Brooklyn, New York, and the "Elmhurst Clinic" and "Hillside Clinic" (together with the Avenue V Clinic, the "Clinics") were purported medical clinics located in Queens, New York. At all relevant times, the Clinics were nominally owned by, and/or billed Medicare and Medicaid under the name of, a particular licensed physician (the "Doctor"), and purported to offer medical services and diagnostic testing performed

4

by or under the supervision of the Doctor.  In truth and in fact, however, the Doctor performed only a few medical services and diagnostic tests at the Hillside Clinic, and was rarely present at the Avenue V Clinic or the Elmhurst Clinic.

12.  At all times relevant to this Indictment, VICTOR LIPKIN, the defendant, operated and controlled the Avenue V Clinic.  From in or about 2005 to in or about approximately 2010, LIPKIN also operated and controlled the Hillside Clinic.  Although the Doctor or another licensed physician was listed as the nominal owner of these clinics, at all relevant times, LIPKIN was their beneficial owner, responsible for the clinics' finances, day-to-day operation, and termination of employees, and solicitation of patients.

13.  At all times relevant to this Indictment, VADIM ZUBKOV, a/k/a "Dima," the defendant, operated and controlled the Elmhurst Clinic and, after in or about 2010, the Hillside Clinic.  Although the Doctor was listed as the nominal owner of these clinics, at all relevant times, ZUBKOV was their beneficial owner, responsible for the clinics' finances, day-to-day operation, and solicitation of patients.

14.  At all times relevant to this Indictment, EDUARD ZAVALUNOV, a/k/a "Edik," the defendant, was employed by and/or managed the Elmhurst Clinic and the Hillside Clinic.  Among other responsibilities, ZAVALUNOV was responsible for the day-to-day

5

operation of the clinics, payment of employees and solicitation of patients.

15.   At all times relevant to this Indictment, NIKOLOZ CHOCHIEV, the defendant, was employed by the Avenue V Clinic.   Among other responsibilities, CHOCHIEV was responsible for the solicitation of and coordination with patients.

16.   At times relevant to this Indictment, ANATOLIY FATAKHOV, the defendant, was a technician at the Elmhurst Clinic who administered medical tests to patients.

17.   At times relevant to this Indictment, MARIANA SWAFFAR and JACQUELINE PINEZ, the defendants, were receptionists at the Elmhurst Clinic, responsible for, among other things, confirming insurance coverage for patients of the clinic.

18.   At times relevant to this Indictment, JONATHAN OLIVER, a/k/a "Moe," JASON BRISSETT, a/k/a "Jay," and GILBERT TROTMAN, a/k/a "G," the defendants (the "Runners"), solicited patients to take medical tests at the Hillside Clinic and the Elmhurst Clinic.

## OVERVIEW OF THE HEALTH CARE FRAUD SCHEME

19.   From at least in or about 2005, up to and including in or about November 2014, VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," EDUARD ZAVALUNOV, a/k/a "Edik," NIKOLOZ CHOCHIEV, ANATOLIY FATAKHOV, MARIANA SWAFFAR, JACQUELINE PINEZ, JONATHAN OLIVER, a/k/a "Moe," JASON BRISSETT, a/k/a "Jay," and GILBERT TROTMAN, a/k/a "G," the

defendants, and others known and unknown, participated in a massive scheme to defraud Medicare, Medicaid and other insurance providers (the "Insurance Providers").   In the course of the scheme, the defendants recruited financially disadvantaged people insured by Medicare and/or Medicaid (the "Phony Patients") to undergo unnecessary medical tests at the Clinics in exchange for cash (the "Kickbacks"), and then billed and received money from the Insurance Providers for administering those unnecessary tests.

20.   In the course of their fraudulent scheme, between in or about January 2010 and in or about July 2014 – just a four-year period within the time period of the conspiracy – the Clinics billed approximately $20 million to Medicare and over $50 million to Medicaid for the unnecessary and fraudulent tests and services performed at the Clinics, and received over $25 million in total reimbursements from these programs as a result.

## Means and Methods of the Conspiracy

21.   Beginning in or about 2005, VICTOR LIPKIN and VADIM ZUBKOV, a/k/a "Dima," the defendants, recruited the Doctor to act as the nominal owner of the Clinics and/or the physician under whose name the Clinics would bill the Insurance Providers for services and tests performed at the Clinics.   The Doctor agreed to act in this nominal capacity in exchange for payments from LIPKIN and ZUBKOV.

22.   In furtherance of the scheme, after establishing the

Clinics, VICTOR LIPKIN and VADIM ZUBKOV, a/k/a "Dima," the defendants, hired managers, including EDUARD ZAVALUNOV, a/k/a "Edik," the defendant, to help coordinate and direct the other members of the scheme including, for example, the Runners. In that capacity, ZAVALUNOV, among other things, regularly provided the Runners with cash in order to pay Kickbacks to the Phony Patients.

23. Also in furtherance of the scheme, NIKOLOZ CHOCHIEV, the defendant, among other responsibilities, recruited individuals with Medicaid and/or Medicare insurance to act as Phony Patients and undergo unnecessary medical tests at the Avenue V Clinic in exchange for Kickbacks. CHOCHIEV also personally delivered the Kickbacks to the Phony Patients at their residences. In addition, CHOCHIEV recruited others to recruit and pay Kickbacks to Phony Patients. In furtherance of the scheme, CHOCHIEV made threats of physical violence directed towards individuals whom CHOCHIEV believed owed money to the scheme members.

24. JONATHAN OLIVER, a/k/a "Moe," JASON BRISSETT, a/k/a "Jay," and GILBERT TROTMAN, a/k/a "G," the defendants, recruited individuals with Medicaid and/or Medicare insurance to act as Phony Patients and undergo unnecessary medical tests at the Hillside Clinic and Elmhurst Clinic in exchange for Kickbacks, which these defendants also paid to the Phony Patients. OLIVER, BRISSETT and TROTMAN often recruited financially disadvantaged people from soup kitchens and

8

local welfare offices to act as Phony Patients in exchange for Kickbacks. After recruiting such individuals, and confirming through MARIANA SWAFFAR and/or JACQUELINE PINEZ, the defendants, as set forth below, that the Insurance Providers would reimburse medical tests performed on such individuals, OLIVER, BRISSETT and TROTMAN then coached the Phony Patients on what to say on various medical forms in order to make it falsely appear that the medical tests they planned to undergo were medically necessary.

25.  Also in furtherance of the scheme, before the medically unnecessary tests were performed on the Phony Patients, MARIANA SWAFFAR and JACQUELINE PINEZ, the defendants, obtained the Phony Patients' Medicaid and/or Medicare insurance information, and then contacted the Insurance Providers to confirm that the Insurance Providers would reimburse for the tests. SWAFFAR and PINEZ engaged in such conduct knowing that the Phony Patients had been recruited by the Runners and were promised and paid Kickbacks. Once they determined that a particular Phony Patient's insurance would pay out claims made by the clinic for the planned medical tests, SWAFFAR and PINEZ notified the Runners that the individuals were eligible and could be brought to the clinic to undergo such tests.

26.  As part of the scheme, after the Phony Patients had been recruited, confirmed to be Medicare and/or Medicaid eligible, and transported to one of the Clinics by the Runners, in many instances,

9

certain individuals who were not physicians administered a host of unnecessary medical tests to the Phony Patients.   In particular, for example, ANATOLIY FATAKHOV, the defendant, administered unnecessary medical tests, including stress tests, to the Phony Patients of the Elmhurst Clinic.   FATAKHOV administered these tests outside the presence and supervision of the Doctor or other licensed physician, knowing that the presence or supervision of a licensed physician was required.

27.   After the Phony Patients received the unnecessary medical tests from ANATOLIY FATAKHOV, the defendant, among others, and were paid kickbacks, the Clinics submitted materially false and fraudulent bills to the Insurance Providers – electronically and by mail – to trick them into paying the Clinics for these unnecessary tests.   As the defendants well knew, the bills were materially false in multiple ways.   In addition to fraudulently seeking reimbursement for unnecessary medical tests, the bills submitted to the Insurance Providers falsely indicated that the tests had been administered by a licensed physician, in particular, the Doctor, even though, as discussed above, the Doctor was rarely present at the Elmhurst Clinic or the Avenue V Clinic.   Moreover, as the defendants well knew, in violation of New York law, the Clinics were not owned, operated and controlled by a licensed physician.   In total, through their fraudulent scheme, the defendants billed approximately $20 million

to Medicare and over $50 million to Medicaid for the unnecessary and fraudulent tests and services performed at the Clinics.

28.   In furtherance of the scheme, VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," and EDUARD ZAVALUNOV, a/k/a "Edik," the defendants, opened and controlled bank accounts, including accounts in the respective names of the Clinics, for the purpose of depositing proceeds from the defendants' scheme.   Between December 2009 and March 2014 – less than a five-year period within the time period of the conspiracy — LIPKIN deposited or caused to be deposited approximately $18 million into a bank account held in the name of the Avenue V Clinic.   Between April 2012 and May 2014, ZUBKOV and ZAVALUNOV deposited or caused to be deposited at least approximately $4.7 million into certain bank accounts held in the name of the Hillside Clinic and the Elmhurst Clinic.

29.   Also in furtherance of the scheme, VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," and EDUARD ZAVALUNOV, a/k/a "Edik," the defendants, transferred the proceeds of the scheme to various shell companies they variously owned and controlled in the names of purported management and/or marketing companies, such as Exit Management (controlled by LIPKIN); V&Z Marketing Inc. (controlled by ZUBKOV); and ENZ Marketing Inc. (controlled by ZAVALUNOV).   These entities had no legitimate business purpose, and merely served to conceal the fact that the funds they received were obtained from the

defendants' unlawful activity.

## STATUTORY ALLEGATIONS

30.   From at least in or about 2005, up to and including in or about November 2014, in the Southern District of New York and elsewhere, VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," EDUARD ZAVALUNOV, a/k/a "Edik," NIKOLOZ CHOCHIEV, ANATOLIY FATAKHOV, MARIANA SWAFFAR, JACQUELINE PINEZ, JONATHAN OLIVER, a/k/a "Moe," JASON BRISSETT, a/k/a "Jay," and GILBERT TROTMAN, a/k/a "G," the defendants, willfully and knowingly, combined, conspired, confederated and agreed together and with each other to violate Title 18, United States Code, Sections 1341, 1343 and 1347.

31.   It was a part and an object of the conspiracy that VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," EDUARD ZAVALUNOV, a/k/a "Edik," NIKOLOZ CHOCHIEV, ANATOLIY FATAKHOV, MARIANA SWAFFAR, JACQUELINE PINEZ, JONATHAN OLIVER, a/k/a "Moe," JASON BRISSETT, a/k/a "Jay," and GILBERT TROTMAN, a/k/a "G," the defendants, and others known and unknown, knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and would and did deposit and

cause to be deposited a matter and thing to be sent and delivered by a private and commercial interstate carrier, and would and did take and receive therefrom, a matter and thing, and would and did knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, a matter and thing, in violation of Title 18, United States Code, Section 1341.

32.   It was a further part and an object of the conspiracy that VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," EDUARD ZAVALUNOV, a/k/a "Edik," NIKOLOZ CHOCHIEV, ANATOLIY FATAKHOV, MARIANA SWAFFAR, JACQUELINE PINEZ, JONATHAN OLIVER, a/k/a "Moe," JASON BRISSETT, a/k/a "Jay," and GILBERT TROTMAN, a/k/a "G," the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

33.   It was a further part and an object of the conspiracy that VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," EDUARD ZAVALUNOV, a/k/a

13

"Edik," NIKOLOZ CHOCHIEV, ANATOLIY FATAKHOV, MARIANA SWAFFAR, JACQUELINE PINEZ, JONATHAN OLIVER, a/k/a "Moe," JASON BRISSETT, a/k/a "Jay," and GILBERT TROTMAN, a/k/a "G," the defendants, and others known and unknown, knowingly and willfully, would and did execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

OVERT ACTS

34.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about March 10, 2014, JONATHAN OLIVER, a/k/a "Moe," the defendant, attempted to recruit an individual to take a medically unnecessary medical test in exchange for a cash payment.

b.   On or about March 17, 2014, MARIANA SWAFFAR, the defendant, contacted an insurance provider to determine a patient's eligibility for an unnecessary medical test at the Elmhurst Clinic.

c.   On or about March 21, 2014, GILBERT TROTMAN, a/k/a "G," the defendant, paid an individual for taking an unnecessary

14

medical test.

d.   On or about April 7, 2014, JASON BRISSETT, a/k/a "Jay," the defendant, paid an individual for taking an unnecessary medical test.

e.   On or about April 10, 2014, NIKOLOZ CHOCHIEV, the defendant, delivered a cash payment to an individual who taken an unnecessary medical test at the Avenue V Clinic.

f.   On or about June 23, 2014, EDUARD ZAVALUNOV, a/k/a "Edik," JACQUELINE PINEZ, and ANATOLIY FATAKHOV, the defendants, had a telephone conversation about paying an individual who had taken an unnecessary medical test at the Elmhurst Clinic.

g.   On or about August 12, 2014, JACQUELINE PINEZ, the defendant, had a telephone conversation with an employee of an insurance provider based in New York, New York, about an employee who had taken a medical test at the Elmhurst Clinic.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

35.   The allegations set forth in paragraphs 1 through 29 are incorporated by reference as if set forth fully herein.

36.   From at least in or about 2009, up to and including in or about November 2014, in the Southern District of New York and elsewhere, VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," and EDUARD

15

ZAVALUNOV, a/k/a "Edik," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

37.   It was a part and an object of the conspiracy that VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," and EDUARD ZAVALUNOV, a/k/a "Edik," the defendants, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct a financial transaction, which in fact involved the proceeds of specified unlawful activity, to wit, the conspiracy to commit mail fraud, wire fraud and health care fraud alleged in Count One, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of these proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

### FORFEITURE ALLEGATION AS TO COUNT ONE

38.   As a result of committing the Federal health care fraud, mail and wire fraud conspiracy offenses, in violation of Title 18, United States Code, Sections 1349, 1347, 1343, and 1341, alleged in Count One of this Indictment, VICTOR LIPKIN, VADIM ZUBKOV, a/k/a

16

"Dima," EDUARD ZAVALUNOV, a/k/a "Edik," NIKOLOZ CHOCHIEV, ANATOLIY FATAKHOV, MARIANA SWAFFAR, JACQUELINE PINEZ, JONATHAN OLIVER, a/k/a "Moe," JASON BRISSETT, a/k/a "Jay," and GILBERT TROTMAN, a/k/a "G," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(7), all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense charged in Count One of this Indictment, including but not limited to the following:

     a.   At least $25 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the health care, mail, and wire fraud conspiracy offense for which the defendants are jointly and severally liable.

     b.   Any and all United States currency, funds or other monetary instruments credited to the following accounts:

| No. | Bank | Account No. |
|-----|------|-------------|
| 1. | Citibank | 9932180057 |
| 2. | Bank of America | 483013550608 |
| 3. | Citibank | 4978160200 |
| 4. | J.P. Morgan Chase | 456303507 |

| 5.  | JP Morgan Chase | 778904516    |
| --- | --------------- | ------------ |
| 6.  | Citibank        | 4969587026   |
| 7.  | TD Bank         | 7922741173   |
| 8.  | TD Bank         | 7927920004   |
| 9.  | JP Morgan Chase | 4969586998   |
| 10. | TD Bank         | 4255578515   |
| 11. | Citibank        | 70521426     |
| 12. | Bank of America | 009405132555 |
| 13. | JP Morgan Chase | 3039064976   |
| 14. | Citibank        | 4969168542   |
| 15. | Citibank        | 456510663    |
| 16. | Citibank        | 26000287     |
| 17. | JPMorgan Chase  | 915181572    |
| 18. | TD Bank         | 4255893103   |
| 19. | TD Bank         | 4261966647   |
| 20. | TD Bank         | 4283985807   |

### Substitute Assets Provision

39.   If any of the above described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property described above, including the defendants' interests in the real property set forth above.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853.)

### FORFEITURE ALLEGATION AS TO COUNT TWO

40.   As a result of committing the money laundering offense charged in Count Two of this Indictment, VICTOR LIPKIN, VADIM ZUBKOV, a/k/a "Dima," and EDUARD ZAVALUNOV, a/k/a "Edik," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real and personal,

19

involved in said offense, and any property traceable to such property, including but not limited to the following:

      a.   At least $25 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the health care, mail, and wire fraud conspiracy offenses for which the defendants are jointly and severally liable.

      b.   Any and all United States currency, funds or other monetary instruments credited to the following accounts:

| | Bank | Account |
|---|---|---|
| 1. | Citibank | 9932180057 |
| 2. | Bank of America | 483013550608 |
| 3. | Citibank | 4978160200 |
| 4. | J.P. Morgan Chase | 456303507 |
| 5. | JP Morgan Chase | 778904516 |
| 6. | Citibank | 4969587026 |
| 7. | TD Bank | 7922741173 |
| 8. | TD Bank | 7927920004 |
| 9. | JP Morgan Chase | 4969586998 |
| 10. | TD Bank | 4255578515 |

| 11. | Citibank | 70521426 |
|-----|----------|----------|
| 12. | Bank of America | 009405132555 |
| 13. | JP Morgan Chase | 3039064976 |
| 14. | Citibank | 4969168542 |
| 15. | Citibank | 456510663 |
| 16. | Citibank | 26000287 |
| 17. | JPMorgan Chase | 915181572 |
| 18. | TD Bank | 4255893103 |
| 19. | TD Bank | 4261966647 |
| 20. | TD Bank | 4283985807 |

## Substitute Assets Provision

41.   If any of the above described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)

21

and 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property, including but not limited to all of the property set forth above.

                        (Title 18, United States Code, Section 982;
                        Title 21, United States Code, Section 853.)


_____          _____
FOREPERSON                       PREET BHARARA
                                 United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

VICTOR LIPKIN,
VADIM ZUBKOV, a/k/a "Dima,"
EDUARD ZAVALUNOV, a/k/a "Edik,"
NIKOLOZ CHOCHIEV,
ANATOLIY FATAKHOV,
MARIANA SWAFFAR,
JACQUELINE PINEZ,
JONATHAN OLIVER, a/k/a "Moe,"
JASON BRISSETT, a/k/a "Jay," and
GILBERT TROTMAN, a/k/a "G,"

Defendants.

## SEALED INDICTMENT

14 Cr.

(18 U.S.C. §§ 1349, 1956(h).)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.